UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOCCI BUILDING CORPORATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JAMES BENTLEY, <br><br> Defendant. | Civ. No. 2:17-cv-6907-KM-SCM <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This is an action alleging conversion and fraud against James Bentley. It comes before the court on the unopposed motion of plaintiff, Tocci Building Corporation, for default judgment. Defendant James Bentley has not responded to the complaint, and the clerk has entered default. For the reasons stated herein, the motion for default judgment will be granted.

**I.   DISCUSSION**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the court must determine whether the "unchallenged facts

constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *DirecTV, Inc. v. Asher*, No. 3-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright & Miller, 10A *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, No. 12-cv-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiffs well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations in the complaint. *Doe*, 2013 WL 3772532, at *2-3.

### A. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within 21-day time period provided by the Federal Rules. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18-19 (3d Cir. 1985).

On September 14, 2016 and September 16, 2016, Tocci's process made attempts to serve Bentley at his personal residence located at 8 Hazel Street, Stanhope, NJ 07874. (ECF No. 4, ¶ 3 (hereinafter "Erlanger Cert.")). On September 14, 2016, no one answered the door. (Erlanger Cert. ¶ 4). On September 16, 2016, an unidentified female answered the door and stated that Bentley did not reside at the address; she refused to provide further information. (Erlanger Cert. ¶ 4).

Tocci's attorney, using the Westlaw database, found that Bentley's current address was still 8 Hazel Street, Stanhope, NJ 07874. (Erlanger Cert. ¶ 5). He also confirmed with the United States Postal Service that Bentley had not submitted a change-of-address order. (Erlanger Cert. ¶ 6). Tocci's process server obtained a "Nationwide Skip Trace Report" on November 3, 2017, which also indicated that Bentley's last-known address was 8 Hazel Street, Stanhope, NJ 07874. (Erlanger Cert. ¶ 7).

On November 7, 2017, Tocci's process server again attempted to serve Bentley at 8 Hazel Street, Stanhope, NJ 07874. (Erlanger Cert. ¶ 8). The individual inside the residence refused to come to the door. (Erlanger Cert. ¶ 8). On December 5, 2017, Tocci's process server performed another "Nationwide Skip Trace Report" on November 3, 2017, which also found that Bentley's last-known address was 8 Hazel Street, Stanhope, NJ 07874. (Erlanger Cert. ¶ 9).

Tocci filed a motion to extend time limit for service, which was granted. (Erlanger Cert. ¶¶ 10-11). The court authorized service by mail in accordance with New Jersey Rule of Court 4:4-3. (Erlanger Cert. ¶ 11). On December 20, 2017, Tocci made service upon Bentley simultaneously by certified mail and ordinary mail. (Erlanger Cert. ¶ 12). On January 10, 2018, Tocci's attorney received notification from the United States Postal Service that Bentley refused to accept delivery of the certified mail. (Erlanger Cert. ¶ 13). The ordinary mail has not been returned. (Erlanger Cert. ¶ 14). Per New Jersey Rule of Court 4:4-3, this constitutes adequate service.

On January 22, 2018, Tocci sought an entry of default against Bentley. (ECF No. 7). The clerk entered default on January 24, 2018. (ECF No. 7). On January 24, 2018, Tocci moved for default judgment. (ECF No. 8). There has been no response to this motion.

Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18-19.

### B. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

#### 1. Factor 1: Meritorious Defense

The evaluation of the first factor is always complicated by the defendant's failure to answer or to oppose the motion. My independent review of the case, however, does not suggest that the claims are legally flawed or that Bentley could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations of the complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Tocci has successfully stated a claim for relief against Bentley.

The complaint alleges that Tocci, served as a general contractor and construction manager for the construction of an Embassy Suites Hotel, adjoining restaurant and Starbucks (the "Project"). (Compl. ¶ 6). Tocci worked under the Project owner, Connell Hospitality LLC ("Connell"). (Compl. ¶ 6). Tocci entered into a subcontract (the "Subcontract") with Quality Construction Heating & Air Inc. ("Quality"). (Compl. ¶ 7). Quality was to perform the HVAC work in exchange for a contract price of $3,898,231.00. (Compl. ¶ 7). Bentley is an officer and director of Quality; he was Quality's project manager on the Project. (Compl. ¶ 8).

According to Tocci, Bentley was familiar with the day-to-day work of the project, including the equipment that needed to be purchased or

4

rented. (Compl. ¶¶ 9-12). Bentley was responsible for preparing applications for payment to fund equipment purchases. (Compl. ¶ 13).

Beginning in May 2015, Bentley signed and submitted to Tocci periodic applications for payment. (Compl. ¶ 15). Each application for payment contained a certification by Bentley that the funds requested were for work completed in accordance with the Subcontract. (Compl. ¶ 16). Specifically, it provided as follows:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by the Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor of Work for which previous Certificates for Payment were issues and payments received from the Owner, and that current payment shown herein is now due.

(Compl. ¶ 16). Each application for payment included sheets that itemized the final payment request and stated a description of the work, the amounts paid for previously completed work, and amounts due for work completed in the current pay period. (Compl. ¶ 17). Bentley certified several applications for payment during the Project. (Compl. ¶ 18).

Tocci claims that Bentley made false claims for $662,750.00 for Trane equipment on June 25, 2015; $87,325.28 for boilers, pumps and roof top units on July 14, 2015; $87,325.28 for various equipment and items on June 10, 2016. (Compl. ¶¶ 19-28).

Based on Bentley's claims, Tocci invoiced Connell, received funds from Connell, and then paid Quality. (Compl. ¶¶ 29-30). During the course of the Project, Tocci became concerned that some of the equipment was not on the project site. (Compl. ¶ 31). Tocci made multiple demands that Quality provide proof that it purchased all of the relevant equipment, as claimed. (Compl. ¶ 32). Around February 2017,

5

Quality admitted to Tocci that it never ordered two chillers for which payment had been made in July 2015. (Compl. ¶ 33).

Tocci claims that Bentley knew the equipment was not purchased but did not inquire about the missing equipment or the status of the funds. (Compl. ¶¶ 34-37). Bentley allegedly knew that the money was not being requested for the purpose represented on the payment applications that he certified. (Compl. ¶ 37).

On September 8, 2017, Tocci filed this action seeking damages amounting to $501,835.95. (Compl. ¶ 38). The complaint asserts two counts: conversion and fraud. Count one claims that Quality received funds from Tocci but never used the funds for their certified purposes; instead, Quality allegedly converted the funds for its own use. (Compl. ¶¶ 40-53). Bentley allegedly knew that the funds were being converted and thus knowingly and intentionally misappropriated Tocci's funds. (Compl. ¶¶ 54-58). Count two claims that Bentley knowingly and intentionally misrepresented the amount of money due to Quality for work actually performance in accordance with the Subcontract. (Compl. ¶¶ 59-69). Bentley thus induced Tocci to provide funds to Quality and those funds were not used for the Subcontract. (Compl. ¶¶ 70-76). Tocci seeks $501,835.95 plus interest, costs of suit, punitive damages, attorney's fees, and any other appropriate relief. (Compl. ¶¶ 48, 60).

Fraud is the theory that best fits the allegations of the complaint. Fraud comprises five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Accepting the allegations of the complaint as true, I must find that they sufficiently allege a claim of fraud. It is alleged that Bentley materially misrepresented the orders and certifications, knew that those orders

6

were false, intended Tocci to rely on them, and caused Tocci to disburse money to Quality that was not actually used to purchase the requested items for the Project. No obvious defects or defenses suggest themselves.

### 2. Factors 2 and 3: Prejudice to Plaintiffs and Culpability of Defendants

The second and third factors weigh in favor of default. Defendant was properly served under New Jersey Rules of Court, but he failed to appear or defend in any manner. It is clear that plaintiff has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-cv-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011); *see id.* (finding that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-cv-1858, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff] will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the defendant's culpability in its default." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023 at *4. In this case, "[t]here is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of Am. v. Taylor*, No. 8-cv-2108, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted)).

Overall, then, the three factors support the entry of default judgment. I will grant the motion for default judgment.

### C. Damages

As to liability, the allegations of the complaint are deemed true. Not so as to damages. "[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe*, 2013 WL 3772532 at *2. While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc.*, 558 F. Supp. 2d at 536). Further, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking a default judgment to provide additional evidence. *Doe*, 2013 WL 3772532 at *2.

Tocci requests damages of $501,835.95. It is unclear, however, how he arrived at this sum. Tocci refers specifically to separate claims for $662,750.00, $87,325.28 and $87,325.28. (Compl. ¶¶ 19-28). Those numbers do not add to $501,835.95 and Tocci does not identify the particular items that were not purchased as claimed.

Tocci shall therefore submit, within 14 days, an affidavit with documentation providing evidence of damages—i.e., documentation of specific items that were ordered under certification but never purchased for the Project. That will position the court to enter judgment in a sum certain.

## II. CONCLUSION

For the foregoing reasons, Tocci's motion for default judgment is granted, subject to a submission documenting damages, as stated above.

Dated: July 20, 2018

**KEVIN MCNULTY**
**United States District Judge**

9